IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MATTHEW DUNCAN, Individually and on behalf of all others similarly situated,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>XTO ENERGY, INC.,<br>　　　　　　　Defendant. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

1. Plaintiff Matthew Duncan (Duncan) brings this action individually and on behalf of all current and former Completions/Drilling Consultants (Day Rate Workers or Putative Class Members) who worked for XTO Energy, Inc. (XTO) and were paid a day rate with no overtime compensation.

2. Duncan worked for XTO as a Day Rate Consultant.

3. Duncan and the Day Rate Workers (as defined below) regularly worked for XTO in excess of forty (40) hours each week.

4. But XTO did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, XTO improperly paid Duncan and the Day Rate Workers a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq*.

8. For at least the past three years, XTO has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

9. This Court has personal jurisdiction over XTO because XTO is incorporated in Delaware.

10. Pursuant to 28 U.S.C. § 1391, venue is proper in the District of Delaware because XTO is a resident entity of this judicial district and is subject to the court's personal jurisdiction with respect to the civil action in question.

## THE PARTIES

11. Plaintiff Duncan worked for XTO from approximately January 2017 through May 2019.

12. Duncan did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.

13. Duncan's consent to be a party plaintiff is attached as Exhibit 1.

14. Duncan brings this action on behalf of himself and all similarly situated Completions/Drilling Consultants who were paid by XTO's day rate pay plan. XTO paid each of these workers a flat amount for each day worked.

15. The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> All current and former Completions/Drilling Consultants who worked for or on behalf of XTO Energy, Inc. and who were paid according to its day rate pay plan in the past three (3) years (the "Day Rate Workers" or "Putative Class Members").

16. XTO is a corporation doing business throughout the United States. XTO may be served by serving its registered agent for service of process: **Corporation Service Company,** 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

## COVERAGE UNDER THE FLSA

17. At all times hereinafter mentioned, XTO was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all times hereinafter mentioned, XTO was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. At all relevant times, XTO has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20. At all relevant times, XTO has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

21. In each of the past 3 years, XTO's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

22. At all relevant times, Duncan and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

23. XTO uniformly applied its policy of paying its Completions/Drilling Consultants, including Duncan, a day rate with no overtime compensation.

24. XTO applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

25. By paying its Completions/Drilling Consultants a day rate with no overtime compensation, XTO violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

26. As a result of this policy, XTO and the Putative Class Members do not receive overtime as required by the FLSA.

27. XTO's uniform compensation scheme of paying its Completions/Drilling Consultants a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## ADDITIONAL FACTS

28. XTO is an international natural gas and oil producer operating throughout five the divisions in the United States, Western Canada, and South America.[1]

29. Those divisions include the Permian Division, Delaware Division, Mid-Continent Division, the Canada Division, and the Argentina Division.

30. In order to make the goods and provide the services it markets to customers, XTO employs Completions/Drilling Consultants like Duncan and the Putative Class Members.

31. To complete its business objectives, XTO hired personnel, such as Duncan, to perform consultant services.

32. While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work in the oilfield.

33. Plaintiff Duncan worked for XTO as a Completions/Drilling Consultant in Texas and New Mexico from approximately January 2017 through May 2019.

34. XTO paid Duncan and the Putative Class Members a day rate for each day worked.

35. That is, Duncan and the Putative Class Members did not get paid if they did not work.

36. Based on the schedules set by XTO, Duncan and the Putative Class Members worked over forty (40) hours nearly every workweek they performed services for XTO.

---

[1] http://www.xtoenergy.com/en-us/operations/operating-areas.

37. Although it is well-known that blue-collar oilfield workers like Duncan and the Putative Class Members are not exempt from overtime, XTO did not pay Duncan and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

38. Duncan's and the Putative Class Members' primary job duties included performing daily checklists, assisting with the preparation of equipment, and performing other oilfield related functions on various job sites.

39. Upon information and belief, Duncan and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by XTO.

40. Upon further information and belief, Duncan's and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO and/or its clients.

41. Upon further information and belief, Duncan's and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO.

42. Virtually every job function was pre-determined by XTO, including the tools to use at a job site, the schedule of work, and related work duties. Duncan and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

43. Moreover, Duncan's and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

44. Indeed, Duncan and the Putative Class Members are blue-collar workers.

45. They rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfield.

46. XTO determined the hours Duncan and the Putative Class Members worked.

47. XTO set Duncan's and the Putative Class Members' pay and controlled the number of days (and hours) they worked.

48. XTO set all employment-related policies applicable to Duncan and the Putative Class Members.

49. XTO maintained control over pricing and marketing. XTO also chose equipment and product suppliers.

50. XTO owned or controlled the equipment and supplies that Duncan and the Putative Class Members used to perform their work.

51. XTO had the power to hire and fire Duncan and the Putative Class Members.

52. XTO made all personnel and payroll decisions with respect to Duncan and the Putative Class Members, including but not limited to, the decision to pay Duncan and the Putative Class Members a day rate with no overtime pay.

53. XTO provided tools and equipment that Duncan and the Putative Class Members used.

54. Duncan and the Putative Class Members did not employ their own workers.

55. Duncan and the Putative Class Members worked continuously for XTO on a permanent full-time basis.

56. XTO, instead of Duncan and the Putative Class Members, made the large capital investments in leases, buildings, equipment, tools, and supplies. Moreover, XTO paid operating expenses like rent, payroll, marketing, insurance, and bills.

57. Duncan and the Putative Class Members relied on XTO for their work.

58. Duncan and the Putative Class Members did not market any business or services of their own.

59. Instead, Duncan and the Putative Class Members worked the hours assigned by XTO, performed duties assigned by XTO, worked on projects assigned by XTO, and worked for the benefit of XTO and its customers.

60. XTO paid Duncan and the Putative Class Members on a weekly basis based on the number of days that they worked.

61. Duncan and the Putative Class Members did not earn a profit based on any business investment of their own.

62. Rather, Duncan's and the Putative Class Members' earning opportunity stemmed only from the number of days they were allowed to work, which was controlled by XTO.

63. XTO improperly classified Duncan and the Putative Class Members as independent contractors.

64. The classification was improper because Duncan and the Putative Class Members were not in business for themselves.

65. Instead, they were economically dependent upon XTO for their work.

66. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

67. XTO denied Duncan and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

68. Duncan and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

69. XTO applied this pay practice despite clear and controlling law that states that Duncan and the Putative Class Members were XTO's **non-exempt** employees, and not independent contractors.

70. Accordingly, XTO's pay policies and practices blatantly violated (and continue to violate) the FLSA.

71. To continue operating, XTO relies on Completions/Drilling Consultants.

72. While exact job titles and job duties may differ, these Completions/Drilling Consultants are subjected to the same or similar illegal pay practices for similar work.

73. Duncan was not guaranteed a salary.

74. XTO cannot demonstrate that Duncan was paid on a salary basis in accordance with the FLSA.

75. XTO cannot demonstrate that Duncan was not its employee for purposes of the FLSA.

76. Duncan's and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

77. Duncan and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

78. Moreover, Duncan and the Putative Class Members did not (and currently do not) supervise two or more employees.

79. Duncan's and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of XTO and/or its customers.

80. Duncan and the Putative Class Members did not employ their own workers.

## CAUSES OF ACTION - COUNT ONE
### (Collective Action Alleging FLSA Violations)

### FLSA VIOLATIONS

81. All previous paragraphs are incorporated as though fully set forth herein.

82. Specifically, Duncan and the Putative Class Members are (or were) non-exempt employees who worked for XTO and were engaged in oilfield services that were directly essential to the production of goods for XTO and related oil and gas exploration and production companies. 29 U.S.C. § 203(j).

83. At all times hereinafter mentioned, Duncan and the Putative Class Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

84. In violating the FLSA, XTO acted willfully, without a good faith basis, and with reckless disregard of applicable federal law.

85. The proposed collective of similarly situated employees, i.e., Putative Class Members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 15.

86. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of XTO.

87. XTO violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

88. Duncan and the Putative Class Members have suffered damages and continue to suffer damages as a result of XTO's acts or omissions as described herein, and XTO is in possession and

control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

89. Moreover, XTO knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Duncan and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

90. XTO knew or should have known its pay practices were in violation of the FLSA.

91. XTO is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

92. Duncan and the Putative Class Members, on the other hand, are (and were) unsophisticated employees who trusted XTO to pay overtime in accordance with the law.

93. The decision and practice by XTO to not pay overtime was neither reasonable nor in good faith.

94. Accordingly, Duncan and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

95. All previous paragraphs are incorporated as though fully set forth herein.

96. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Duncan.

97. Other similarly situated employees have been victimized by XTO's patterns, practices, and policies, which are in willful violation of the FLSA.

98. The Putative Class Members are defined in Paragraph 15.

99. XTO's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Putative Class Members.

100. Thus, Duncan's experiences are typical of the experiences of the Putative Class Members.

101. The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment.

102. All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

103. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

104. Indeed, the Putative Class Members are blue-collar oilfield workers entitled to overtime after forty (40) hours in a week.

105. XTO has employed a substantial number of similarly situated Completions/Drilling Consultants across the United States since January 2017.

106. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States.

107. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

108. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and XTO will retain the proceeds of its rampant violations.

109. Moreover, individual litigation would be unduly burdensome to the judicial system.

110. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

111. Accordingly, the FLSA collective of similarly situated Plaintiffs should be certified as defined as in Paragraph 15 and notice should be promptly sent. At all times hereinafter mentioned, XTO has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

## RELIEF SOUGHT

112. Duncan respectfully prays for judgment against XTO as follows:

   a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 15 and requiring XTO to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

   b. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

   c. For an Order pursuant to Section 16(b) of the FLSA finding XTO liable for unpaid back wages due to Duncan (and those Putative Class Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Duncan (and those Putative Class Members who have joined in the suit);

   d. For an Order awarding the costs and expenses of this action;

   e. For an Order awarding the attorneys' fees;

   f. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law.

Dated: January 21, 2022

Of Counsel:

Michael A. Josephson
Andrew W. Dunlap
Carl A. Fitz
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

Richard J. (Rex) Burch
BRUCKNER BURCH, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Clif Alexander
ANDERSON ALEXANDER PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Tel: 361-452-1279
Fax: 361-452-1284

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St.
12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff and the Putative Class Members*